[Crim. No. 4194. Fourth Dist., Div. Two. Apr. 30, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT J. ISENOR et al., Defendants and Appellants.

COUNSEL

Ronald Steelman for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

OPINION

KERRIGAN, J. — In count I of an information, the appellant Robert Isenor and a codefendant Pepi Rogers were charged with burglary (Pen. Code, § 459); in count II, the appellant Robert Isenor and the aforesaid codefendant Pepi Rogers were charged with grand theft (Pen. Code, §§ 484-487); in count III, the appellant Melody Isenor was charged with receiving stolen property (Pen. Code, § 496); in count IV, appellant

Robert Isenor was charged with receiving stolen property (Pen. Code, § 496); the information also contained an allegation that appellant Robert Isenor had suffered a 1968 felony conviction of first degree burglary; he admitted the prior felony.

The appellants Robert Isenor (hereinafter "Robert") and Melody Isenor (hereinafter "Melody") are husband and wife. The codefendant Pepi Curt Rogers and Melody are brother and sister.

Prior to trial, the appellants made a motion to sever their trial from that of the codefendant on the ground that Pepi desired to testify 'in their behalf and give exonerating testimony to the effect that they had no connection with the burglary or stolen property. Appellants' motion for a separate trial was denied.

A jury found Robert and the codefendant Pepi Rogers guilty of second degree burglary (count I) and grand theft (count II). Melody was found guilty of receiving stolen property (count III). Pursuant to motion of the district attorney, the charge of receiving stolen property as to Robert (count IV) was dismissed.

Robert was sentenced to state prison for the term prescribed by law on counts I and II, the sentences to run concurrently. Melody was sentenced to state prison on count III; the sentence was suspended, and she was placed on probation on condition she serve one year in the county jail.

Robert appeals from the judgment of conviction, and Melody appeals from the order granting probation.[1]

The issues on appeal involve the propriety of the pretrial order denying severance.

Between 12 noon and 3 p.m. on May 26, 1969, the Huntington Beach residence of the owner of a Swedish restaurant was burglarized and the following items stolen: 2 mink coats, 2 mink collars, a watch, a gold piece, a necklace, a bracelet, a tape recorder, $3,500 in cash and $1,500 in checks. Entry to the home was apparently gained through a side door.

On September 6, 1969, three Huntington Beach police officers went to the appellants' apartment for the purpose of arresting one Larry Stephenson on a charge completely unrelated to the Huntington Beach burglary. Robert Isenor saw one of the uniformed officers approaching the entrance. The officers knocked on the apartment door, but there was no immediate response. While the officers were at the front door, Melody Isenor threw a bag containing three of the stolen furs out a rear window. Some youngsters

---

[1]The codefendant Pepi Curt Rogers is not a party to this appeal.

immediately found the bag and reported their discovery to the police. Robert and Melody were both placed under arrest.

The day after their arrest, a Huntington Beach police officer obtained a warrant to search their apartment. The fourth stolen fur was found hidden inside the lining of one of Melody's jackets.

Larry Stephenson testified upon behalf of the prosecution to the following effect: He had a conversation with Robert wherein the latter admitted that he had "received a great deal of money [$1,000] and two coats" in the Huntington Beach burglary; Robert further stated that two other persons were involved, but that only one of the others entered the premises, while he and the remaining person waited in a car in an alley outside the home.

Stephenson further testified that he had nothing to do with the burglary or stolen property; on 2-3 occasions he saw the fur coats or fur pieces, as well as the stolen tape recorder, in the appellants' apartment. He also related a further conversation in which Robert indicated that the furs had been taken from a residence owned by the "people who owned the Villa Sweden." After appellants' arrest, Robert asked him to tell the police that the fur coats belonged to him [Stephenson]; when the request was originally made, he [Stephenson] agreed to lie for Robert, but later changed his mind.

Relatives of all three defendants testified, some for the prosecution, others for the defense. Prosecution witnesses indicated that Robert admitted he had stolen the furs and offered to sell them. Relatives called by the defense attacked the credibility of the prosecution witnesses, maintaining that they were biased as a result of a family feud. These defense witnesses also testified that they had observed one of the prosecution witnesses in possession of one of the furs and some of the cash realized in the burglary.

Both appellants testified in their own behalf. Robert claimed he was at a union hall at the time of the theft. He further testified that on the day of his arrest, Larry Stephenson came to his apartment and stated that the police were after him and handed Melody a bag which she threw out of the window; he had a conversation with the codefendant Pepi Rogers, in which Pepi admitted his involvement in the burglary.

A Huntington Beach police officer testified that the codefendant Pepi Rogers had confessed to the burglary, admitting he gained entry through a sliding glass door.

A Santa Ana labor union dispatcher corroborated Robert's alibi to the

extent that he testified that Robert was in the union hall after 2:30 p.m. on the day of the crime.

Melody testified as follows: On the day of her arrest, Larry Stephenson came to the apartment with a sack of furs; he told her he had stolen them and the police were after him; when Robert spotted the police approaching the apartment, she tossed the three furs out the window and requested two little boys to throw them in the trash can; she had never seen the one fur coat and two fur pieces previously; several people knew the place where she had hidden the key to the apartment (thereby implying someone else had "planted" the other fur coat in her closet); on the day of the burglary her husband left home about 12 noon to visit union headquarters and returned about 3 p.m.

Robert Isenor, Sr., Robert's father, testified that Larry Stephenson told him that he [Stephenson] had taken the furs to appellants' apartment; that on a later occasion, Stephenson told him he was going to change his story because he had been induced to do so by the district attorney's office; however, Stephenson at no time admitted that he had anything to do with the actual burglary.

The father further testified that he had a telephone conversation with the codefendant Pepi Rogers wherein Pepi admitted that he had committed the burglary without the aid of appellants, and that he had so informed the police.

The codefendant [Rogers] did not testify.

In seeking a reversal, appellants maintain that: (1) The court abused its discretion in denying their motion to sever their trial from that of the codefendant Pepi Rogers; and (2) they were deprived of their Sixth Amendment right to present witnesses in their own behalf (the right to call the codefendant) by reason of the trial court's denial of the severance motion.

Section 1098 of the Penal Code provides as follows: "When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order(s) separate trials. In ordering separate trials, the court in its discretion may order a separate trial as to one or more defendants, and a joint trial as to the others, or may order any number of the defendants to be tried at one trial, and any number of others at different trials, or may order a separate trial for each defendant; provided, that where two or more persons can be jointly tried, the fact that separate accusatory pleadings were filed shall not prevent their joint trial."

■ While the Legislature has expressed a preference for joint trials

(see *People* v. *Lara,* 67 Cal.2d 365, 394 [62 Cal.Rptr. 586, 432 P.2d 202]), the matter of granting separate trials remains largely in the discretion of the trial court. (*People* v. *Graham,* 71 Cal.2d 303, 330 [78 Cal. Rptr. 217, 455 P.2d 153].)

■ In *People* v. *Massie,* 66 Cal.2d 899 [59 Cal.Rptr. 733, 428 P.2d 869], the California Supreme Court indicated a trial court should consider several criteria in determining whether to grant a severance motion. Such factors and the authorities relied on by the *Massie* court (pp. 916-917 and fns. 18, 19, 20, 21, 22) are defined as follows: (1) Where there is an extrajudicial statement made by one defendant which incriminates another defendant and which cannot adequately be edited to excise the portions incriminating the latter (*People* v. *Aranda,* 63 Cal.2d 518, 530-531 [47 Cal.Rptr. 353, 407 P.2d 265]; see also *Bruton* v. *United States,* 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620]); (2) where there may be prejudicial association with codefendants (*People* v. *Chambers,* 231 Cal. App.2d 23, 28-29 [41 Cal.Rptr. 551]); (3) where there may be likely confusion from evidence on multiple counts (*People* v. *Chambers, supra,* p. 34); (4) where there may be conflicting defenses (*Day* v. *State,* 196 Md. 384, 391 [76 A.2d 729]); and (5) where there is a possibility that in a separate trial the codefendant may give exonerating testimony. (*United States* v. *Echeles* (7th Cir. 1965) 352 F.2d 892, 898.)

■ Invoking the *Massie* court's reliance on *United States* v. *Echeles, supra,* 352 F.2d 892, 898, to the effect that a court should grant a separate trial where there is a possibility that at a separate trial the codefendant may give exonerating testimony, the appellants maintain that the trial court herein abused its discretion in denying severance as the codefendant Pepi Rogers would have given exonerating testimony in a separate trial.

The *Massie* case involved two codefendants, Massie and Vetter; Vetter made a timely motion for a separate trial, advancing a number of reasons in support thereof; the trial court erroneously refused to consider any of the reasons, thereby failing to exercise its discretion; in addition, the trial court erred in failing to follow the procedure outlined in *People* v. *Aranda, supra,* 63 Cal.2d 518 (when defendant moves for a separate trial on the basis of a codefendant's incriminating extrajudicial statement);[2] in reversing the trial court for the foregoing errors, the Supreme Court also observed that another ground for severance "confronted" the trial court; at a separate trial, Vetter could call Massie, who might exonerate him; al-

---

[2]Under that procedure, the trial court must grant a separate trial unless: (1) the incriminating portions of a codefendant's confession or statement can be effectively deleted without prejudice to the codefendant; or (2) the prosecution assures the court that the codefendant's confession will not be offered or used in a joint trial.

though this possibility was not advanced in support of Vetter's motion to sever, the reviewing court felt that the trial court should have been aware of it; additionally, this ground was an extremely strong factor in determining that the trial court's error was prejudicial, since Massie had made a *judicial* statement that his confession implicating Vetter was a false accusation brought about by an argument between the two. (*People* v. *Massie, supra,* 66 Cal.2d 899, 915, fn. 11.)

The *Echeles* case, *supra,* involved an attorney charged with suborning perjury, impeding justice, and conspiracy to commit those offenses; the reviewing court reversed Echeles' conviction for failure of the trial court to grant a motion to sever, basing its decision, for the most part, on the possibility that the codefendant Arrington would offer exonerating testimony at a separate trial. (*United States* v. *Echeles, supra,* 352 F.2d 892, 897-898.) The facts before the *Echeles* court at the time the motion for severance was made were unique and distinctive in that the codefendant Arrington had made three judicial statements in a prior trial exonerating Echeles and had indicated thereby that he was not only willing but desirous of testifying in behalf of Echeles in the event the latter's motion for separate trial was granted.

In the relatively recent case of *Byrd* v. *Wainwright* (5th Cir. 1970) 428 F.2d 1017, a strong showing was made that a codefendant would give exonerating testimony in the event a severance was granted the moving defendant; Byrd and six others were indicted for the mass rape of a single victim; at the time of the hearing of the severance motion, Byrd's counsel represented that the defense would be alibi, and that most, if not all, of the codefendants would testify that Byrd was not present at the time of the attack; under such circumstances, the denial of the motion to sever constituted a deprivation of due process.

■ *Byrd, supra,* articulated several relevant tests to guide a trial court in evaluating the adequacy of the showing at the time of the severance motion. When faced with a motion to sever on the ground that there is a possibility that at a separate trial there may be exonerating testimony by a codefendant, there are several areas of inquiry which, to some extent, overlap: (1) Does the movant desire the testimony of the codefendant; (2) will the testimony be exculpatory; (3) how significant is the testimony; (4) is the court satisfied that the testimony itself is bona fide; (5) on the basis of the showing at the time of the motion, how strong is the likelihood that, if the motion were granted, the codefendant will testify; and (6) what is the effect of the granting in terms of judicial administration and economy? (See *Byrd* v. *Wainwright, supra,* 428 F.2d 1017, 1019-1020.)

In the case under review, the appellants' motion for severance was only supported by Robert's affidavit to the following effect: on numerous occasions since his [Robert's] arrest, he had engaged in conversation with the codefendant Pepi Rogers; Rogers had admitted his involvement in the Huntington Beach burglary; Rogers had offered to testify that the Isenors had nothing to do with the burglary nor with the stolen property found in their apartment.

When the motion for severance was argued and considered, Rogers' counsel was present. He informed the court that: he had no knowledge of the matters contained in the hearsay declaration filed by Robert; Rogers was related to appellants; he implied that if a severance were granted and the Isenors were tried first, he would advise his client [Rogers] of his legal right not to testify on the grounds of self-incrimination.

Obviously, appellants satisfied the first three requirements of *Byrd, supra,* and our review of the denial of the motion to sever will focus on the latter three areas of inquiry.

Turning first to the issue of the court's satisfaction with the bona fideness of the exculpatory statement, the court was informed that the three defendants were closely related in that Melody Isenor was the sister of the codefendant Rogers. Consequently, the trial court could have inferred that no exculpatory statement had ever been made by Rogers to Robert, and that even if the statement had been made, that Rogers had a motive in doing so, to wit, to extricate his sister from her involvement in the affair. In addition, the circumstances under which the statement was alleged to have been made were not divulged. In both *Massie* and *Echeles* the exonerating statements were made by the codefendants before judicial officers. Similarly, in *Byrd,* the court treated the exculpatory statements by the codefendants as trustworthy. (*Byrd* v. *Wainwright, supra,* 428 F.2d 1017, 1020.) In contrast, the trial court herein was not required to accept defendant's unsupported version of the purported statements by Rogers. It is not error to deny a motion to sever based solely on defendant's bald assertion that someone has made an exonerating statement in his behalf. (See *Fields* v. *United States* (5th Cir. 1969) 408 F.2d 885, 886-887.)

Second, the likelihood that Rogers would testify in the event a severance was granted was not established. Rather, Rogers' counsel informed the court that he would advise his client not to testify. Therefore, there was no positive assurance that even if the codefendants were to be tried first that he would later testify for appellants, except Robert's uncorroborated declaration that Rogers would be willing to do so. The mere assertion that a codefendant might be willing to exculpate a defendant

is purely speculative. ■ The absence of substantial proof that a codefendant would be willing to testify for the defendant at a later date is, in itself, grounds for denying a motion for severance. (*Fields* v. *United States, supra,* 408 F.2d 885, 886-887; *United States* v. *Kahn* (7th Cir. 1967) 381 F.2d 824, 841; *United States* v. *Barber* (D.Del. 1969) 297 F.Supp. 917, 919-920; *United States* v. *Kaufman* (S.D.N.Y. 1968) 291 F.Supp. 451, 452-453.)

■ Finally, the trial court should consider the import of the granting of a severance on the problem of judicial administration. In order for appellants' motion to gain them anything, it would have been necessary not only that Rogers be tried separately, but that his trial be completed before theirs and culminate in a final judgment. Rogers' counsel, in opposing the motion to sever, had already expressed his reluctance to allow his client to testify, and the court could have inferred that he would have attempted to safeguard Rogers' rights by advising him not to incriminate himself irrespective of which parties were tried first.

It necessarily follows that the trial court carefully considered the criteria enunciated in *Massie* in exercising its discretion and properly determined that there had been an insufficient showing that Rogers would give exonerating testimony in appellants' behalf in the event a separate trial were to be granted.

In the light of what developed during the trial, it is obvious that the appellants' motion could have been supported by strong declarations of third parties, to wit, Robert Isenor, Sr., and the Huntington Beach police officer to whom Pepi Rogers confessed. However, their trial testimony was obviously not before the court at the time it ruled on the motion. ■ Whether denial of a motion to sever the trial of a defendant from that of a codefendant constitutes an abuse of discretion must be decided on the facts as they appear at the time of the hearing on the motion rather than on what subsequently develops. (*People* v. *Gant,* 252 Cal.App.2d 101, 112 [60 Cal.Rptr. 154]; *People* v. *Gann,* 259 Cal.App.2d 706, 714 [66 Cal.Rptr. 508].) Consequently, it cannot be stated that the trial court abused its discretion in denying the motion.

■ Even if it were to be assumed, *arguendo,* that the trial court erred in denying the motion for severance, it has not been established that appellants suffered substantial prejudice as a result thereof. A conviction achieved at a joint trial should not be reversed in the absence of a reasonable probability that defendant would have obtained a more favorable result at a separate trial; the question of the erroneous denial of a severance does not rise to judicial magnitude nor is a right to a separate trial so

fundamental that its denial occasions an automatic reversal. (*People* v. *Massie, supra,* 66 Cal.2d 899, 922-923; *People* v. *Alvarado,* 255 Cal.App. 2d 285, 289 [62 Cal.Rptr. 891].)

The trial court permitted Robert's father to testify to the effect that he had a telephone conversation with Pepi Rogers wherein Rogers stated that the appellants were not involved in the charged offense. The appellant Robert Isenor also testified that Pepi had confessed to him. The officer to whom Pepi confessed rendered testimony to the effect that Pepi told him that he had committed the burglary and that he was confessing to get his sister [Melody] ". . . off the hook." Therefore, Pepi's confession and his exonerating statements were before the jury and, from its verdict, it can be inferred that it gave little credence to Pepi's purported efforts to extricate the appellants.

■ Defendants' final contention is that they were deprived of their constitutional right to compel the attendance of witnesses in their behalf, citing *Washington* v. *Texas,* 388 U.S. 14 [18 L.Ed.2d 1019, 87 S.Ct. 1920]. In *Washington,* the defendant desired to call a coparticipant in the crime as a witness but was prevented from doing so by a statute which allowed the coparticipant to testify for the prosecution but not for the defense; the coparticipant, who had been tried first and convicted, was willing to testify for the defense; the court struck down the statute as being violative of the Sixth Amendment right to compulsory process.

*Washington, supra,* is readily distinguishable from the instant case. The coparticipant herein was not willing to become a witness; he invoked his Fifth Amendment right against self-incrimination, and could not be compelled to testify at either a joint or separate trial. Furthermore, the California scheme is entirely consistent with the decision and rationale in *Washington.* The right of compulsory process is guaranteed. (Cal. Const., art. I, § 13.) There is no provision of law that a defendant is not a competent witness for himself or for a codefendant if he is willing to testify. (See *People* v. *Yeager,* 194 Cal. 452, 488 [229 P. 40].) The issue is therefore without merit.

If the codefendant Rogers had been willing to testify, he was able to do so. The joint trial would have presented no obstacle. Obviously, Rogers' failure to testify arose from a decision to invoke his Fifth Amendment rights.

■ Finally, we address ourselves to a point not raised in the briefs. Defendant Robert Isenor was found guilty of second degree burglary (Pen. Code, § 459) and grand theft (Pen. Code, §§ 484-487), and sentenced to concurrent terms in state prison thereon. Both convictions arose out of

the same occurrence, the burglary of the Huntington Beach residence. Conduct giving rise to more than one offense within the meaning of section 654 of the Penal Code may result in the initial conviction of two or more crimes, only one of which—the more serious offense—is punishable. (*In re McGrew,* 66 Cal.2d 685, 688 [58 Cal.Rptr. 561, 427 P.2d 161].) Multiple sentences forbidden by the code, whether consecutive or concurrent, impose excessive punishment beyond the power of the sentencing court. (*In re Wright,* 65 Cal.2d 650, 655 [56 Cal.Rptr. 110, 422 P.2d 998].)

Where double punishment has been imposed for second degree burglary and grand theft, the appropriate procedure is to eliminate the effect of the judgment as to the lesser offense of grand theft insofar as penalty alone is concerned, and to permit the judgment and sentence to stand as to the greater offense of second degree burglary inasmuch as the penalty for second degree burglary is greater under section 461 of the Penal Code than that imposed for grand theft under section 489 of the Penal Code. (*People v. McFarland,* 58 Cal.2d 748, 762-763 [26 Cal.Rptr. 473, 376 P.2d 499].)

The judgment is reversed insofar as it imposes a sentence for grand theft and in all other respects is affirmed.

Tamura, Acting P. J., concurred.

The petition of appellant Isenor for a hearing by the Supreme Court was denied June 23, 1971.