[No. A121696. First Dist., Div. Three. July 31, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
RODNEY JEROME CONERLY, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

---

†Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II. and III.

## Counsel

Alfons G. Wagner, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Gerald A. Engler, Assistant Attorney General, Catherine A. Rivlin and Allan Yannow, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**McGUINESS, P. J.**—On appeal from a conviction for selling cocaine, appellant Rodney Jerome Conerly contends the trial court abused its discretion in denying his motion to sever his trial from that of his codefendant. He also challenges the sufficiency of the evidence supporting his conviction. We reject these challenges to the conviction but shall modify the judgment to strike certain sentence enhancements the trial court stayed following their imposition.

### FACTUAL AND PROCEDURAL BACKGROUND

During the evening of February 2, 2007, a team of Oakland police officers was conducting a series of narcotic "buy-bust" operations in which certain officers would arrest drug dealers after undercover officers bought narcotics on the street. Two of the undercover officers, Francisco Martinez and Eric Barangan, were working together in the same car.

As Officer Martinez was driving in an area known for drug dealing, he saw four men standing in front of a liquor store. Officer Barangan had seen only two men in the vicinity of the liquor store, although he acknowledged it was possible there were additional people going in and out of the store during the buy-bust operation. Officer Martinez made eye contact with one of the men and waved at him. The man maintained eye contact, nodded his head up and down, and waved to the officer to come over. In court, Officer Martinez identified the man as appellant.

Officer Martinez pulled his car over to the side of the road, about 20 to 30 feet away from where appellant was standing. He exited the vehicle and approached appellant, who asked, "What do you want?" The officer replied that he wanted a "solid," which is a common street term for a $20 or $25 piece of rock cocaine.

Appellant then pointed to a man standing nearby, whom Officer Martinez identified at trial as Rakim Washington, also known as Jerry Palms. Appellant told Officer Martinez to follow Palms around the corner. Officer Martinez followed Palms around the corner and once they stopped, Palms told Officer Martinez to hold out his hand, then sprinkled small pieces and crumbs of an off-white, rocklike substance into the officer's hand. Officer Martinez gave Palms a single $20 of "controlled currency," which is money that has been photocopied for identification purposes. The substance was later determined to be .34 grams of cocaine base. Officer Martinez gave an "arrest signal" to Officer Barangan as he was walking back to the car.

After seeing the arrest signal from Officer Martinez, Officer Barangan contacted the other members of the arrest team by radio. They arrived within seconds and handcuffed appellant and Palms. The arresting officers did not find the controlled currency on Palms, nor did they find a stash of narcotics in the area. Officers Barangan and Martinez identified appellant and Palms to the other officers as the men with whom Officer Martinez had dealt. Officer Barangan had kept appellant in his sight throughout the entire incident.

The Alameda County District Attorney filed an information charging appellant and Palms with the sale of cocaine. (Health & Saf. Code, § 11352, subd. (a).) The district attorney also alleged that appellant had seven prior felony convictions. The first prior conviction was alleged as a prior narcotics conviction under Health and Safety Code section 11370, subdivisions (a) and (c). The second prior conviction was likewise alleged as a prior narcotics conviction (Health & Saf. Code, § 11352, subd. (a)), and was further alleged to come within the purview of Penal Code section 1203.07, subdivision (a)(11), and Health and Safety Code section 11370.2, subdivision (a). The third prior conviction was alleged under Penal Code section 4532, subdivision (a)(1), as an escape from custody while misdemeanor charges were pending. The last four prior conviction allegations were made under Penal Code section 667.5, subdivision (b), as one-year enhancements for separate prior prison terms served for a felony conviction. In addition, the fifth prior conviction was alleged as a strike. (Pen. Code, §§ 667, subd. (e)(1), 1170.12, subd. (c)(1).) The information also contained four prior conviction allegations against Palms.

Appellant and Palms were jointly tried before a jury. At trial, Officers Barangan and Martinez each made an in-court identification of appellant as the person whom Officer Martinez first contacted during the drug sales transaction. Officer Martinez identified appellant with 100 percent certainty.

An expert witness testified that some drug transactions involve two players. One player, identified as the "director," initially interacts with the prospective customer and directs him to the other player, who actually sells the drugs. When the expert witness was given a hypothetical based on Officer Martinez's testimony describing the interaction with appellant and Palms, he stated that he would consider the person asking, "what do you want," to be a director.

The jury found appellant guilty of selling cocaine. The court dismissed the first and third prior conviction allegations on the prosecutor's motion. The court found true the allegations of the remaining prior prison term and prior conviction allegations, including the allegation that appellant had suffered a prior strike.

The court imposed the midterm of four years for selling cocaine and doubled it because of the prior strike. The court also imposed a term of three years for the prior narcotics conviction (Health & Saf. Code, § 11370.2, subd. (a)), and imposed but stayed the one-year terms for each of the four remaining prior prison term enhancements alleged under Penal Code section 667.5, subdivision (b). The total unstayed prison term was 11 years. Appellant filed a timely notice of appeal.

## DISCUSSION

### I. *Motion to Sever*

Appellant contends the court erred in denying his motion to sever his case from that of his codefendant, Palms. He asserts that Palms would have testified in his favor had such a motion been granted, assuming that the trial of Palms were conducted first. For the reasons that follow, we conclude there was no abuse of discretion in denying appellant's request to sever.

#### A. *Facts*

Before trial, the prosecutor had offered that both appellant and Palms could plead guilty and each receive a three-year sentence. The offer was a "package deal" that had to be accepted by both defendants. Palms was willing to accept the offer but appellant rejected it.

During jury selection, appellant's attorney complained that Palms was being prevented from pleading guilty because the prosecutor's offer was valid only if both defendants accepted it. The court interrupted counsel and informed Palms that he had the right to plead guilty and admit the priors but that the plea would be "open," thus exposing Palms to the maximum sentence of 17 years.[1] Palms answered that he understood.

Appellant's attorney stated that while no promise had been made that if Palms pleaded guilty he would be sentenced to three years, "there was discussion that if this case goes to trial, he intend[ed] to plead prior to the deliberations, thus allowing him to get the three years and enabling the DA to prevent him from testifying on his own behalf and on behalf of [appellant]." He added that Palms was "willing to explain to the Court and to the jury that [appellant] was not present that evening, had nothing to do with this, and he

---

[1] An open plea is "a plea unconditioned upon receipt of a particular sentence or other exercise of the court's powers." (*People v. Hoffard* (1995) 10 Cal.4th 1170, 1181 [43 Cal.Rptr.2d 827, 899 P.2d 896]; accord, *Liang v. Superior Court* (2002) 100 Cal.App.4th 1047, 1056 [122 Cal.Rptr.2d 844] [open plea is made without any promises to defendant].)

doesn't know [appellant]." The proffer of what Palms would say was purportedly based upon what Palms had told appellant.

In response, Palms's attorney acknowledged that "apparently" Palms had been telling appellant "in the holding tank that he's going to exonerate [appellant] out at trial." He mentioned Palms had been injured in the freeway collapse during the Loma Prieta earthquake and still apparently suffered mental effects from the injuries he incurred. He then stated: "I just do not feel comfortable in letting him get up on the stand and testify. I'm not—I have to take control of this situation on behalf of him and help him through this as best I can. *He does not wish to testify. He does not wish to subject himself to a 17-year prison sentence.* So I will leave it at that." (Italics added.)

Appellant's counsel orally moved to sever the cases on the basis that a joint trial would result in an inability to present Palms as an exculpatory witness. Palms's attorney expressed no objection to the motion. When the court inquired whether Palms would be willing to testify on appellant's behalf, Palms's attorney responded, "Well, which trial would go first?" The court answered that appellant's case would go first because he was the "A" defendant. Although Palms's counsel stated his client indicated he wanted to testify on behalf of appellant, the attorney also made clear the offer to testify was conditioned on Palms receiving a three-year sentence, stating: "I have no problem with Mr. Palms testifying on behalf of [appellant], as long as Mr. Palms is not punished, or, you know, I don't want to lose that three years. That's the big reason why I don't want to let him get on the witness stand and testify. So if that three-years sentence is going to be in jeopardy because he has testified for [appellant], then no, I'm not going to go along with it. But there is a way to go around it. You could probably try Mr. Palms—well, try Mr. Palms first and sentence him, and then have [appellant's] trial." Appellant's counsel agreed that Palms should be tried first.

After further discussion, the court stated: "We're at the same position we were before, which is there's an offer. If they don't take the offer, which is a package deal, they have to plead open. [¶] . . . [¶] Nothing's changed. That's the situation. Both plead or plead open." The court returned to its original question, which it posed to counsel for Palms, "Is he going to testify for [appellant]?" After the court confirmed there was no assurance Palms would receive a three-year sentence, Palms's counsel responded, "In that case, I am not going to let Mr. Palms testify at [appellant's] trial." The court denied the oral motion to sever.

Appellant renewed his motion to sever before jury selection was complete. Appellant's counsel began his argument with a statement that he had just been in the "well" with his client when he heard Palms indicate "he was willing to testify to say that [appellant] did not have anything to do with the case, and he didn't know him prior to this day." He contended that the three-year offer was being "dangled" in front of Palms to keep him in the case. The court interrupted and asked the prosecutor if there was a three-year promise to Palms at that point. The prosecutor responded there was no absolute promise of a three-year term.

Palms's attorney then stated that he had never authorized appellant's counsel to speak to Palms and that "Mr. Palms should not be held accountable for any statement that he makes in a holding cell. That conversation should not have been taking place." He then stated that Palms would not testify unless he was assured of receiving a three-year sentence. The court noted that "[o]nce an offer is not accepted prior to trial, I will not accept any offer except pleading open."

Appellant's counsel stated that Palms had said "in open court" that he would testify if he could get a three-year sentence.[2] Appellant's counsel then asked the court to inquire directly of Palms whether he would testify on behalf of appellant if the cases were severed. The court rejected the suggestion, indicating it would not be proper to invade the attorney-client relationship over the objection of Palms's counsel, who had already made a representation about what his client was willing to do. The court then denied the renewed motion to sever.

While the jury was deliberating, Palms pleaded no contest to a violation of section 11352 and admitted his four prior convictions. The plea was "open" in that there were no promises made to Palms in exchange for his plea. Palms indicated that he understood he could face up to 17 years in prison as a result of his plea.

Appellant's counsel then moved for a mistrial, contending he was denied the opportunity to call the witnesses he would have liked to have called. Although the court did not expressly deny the motion, it stated, "I think your record is clear. In renewing, it will make it very clear for appellate purposes your position." Shortly thereafter, the jury returned a verdict finding appellant guilty of selling cocaine.

[2] Appellant has not cited to any such statement by Palms—as opposed to his counsel—and we have not found such a statement in the record.

The court followed the prosecutor's recommendation and sentenced Palms to serve three years in state prison. The court recited the history of plea negotiations and affirmed that Palms's plea had been open.

Subsequently, appellant moved for a new trial on the basis that the court had erred in failing to allow him to submit the testimony of Palms. Accompanying the motion was a notarized declaration from Palms in which he stated he would testify that he did not know appellant before the arrest, and that he had made a statement to that effect in open court before trial started.[3] The declaration further indicated that Palms was willing to testify on appellant's behalf "[n]ow that the trial has concluded."

In denying the motion, the trial court characterized what appellant was trying to do as "manipulating the system" by engineering a situation in which Palms would testify only after he had already been sentenced and there was no further penal consequence associated with his admission of guilt and exoneration of appellant. The court rejected appellant's contention there was a tacit understanding that Palms would receive three years if he entered a plea before the verdict was returned.

### B. *Propriety of "Package Deal"*

Appellant contends "[t]he court abused its discretion by endorsing the prosecution's manipulation of the package offer and in not granting appellant's motion for severance." The implication is that the package offer was somehow improper or amounted to prosecutorial misconduct. Appellant's attack on the package plea offer lacks merit.

■ To show misconduct, appellant must demonstrate that the prosecutor did something entirely unnecessary to the proper performance of her duties to transform a willing witness into an unwilling one. (See *People v. Lucas* (1995) 12 Cal.4th 415, 457 [48 Cal.Rptr.2d 525, 907 P.2d 373]; *In re Williams* (1994) 7 Cal.4th 572, 603 [29 Cal.Rptr.2d 64, 870 P.2d 1072].) No such showing has been made here. In the absence of a plea offer, Palms had the option of pleading open or being tried jointly with appellant. Palms made clear he was unwilling to testify under those circumstances. The offer of a package deal did not transform Palms from a willing witness into an unwilling one.

---

[3] As noted earlier, there is no evidence of any such statement in the record on appeal.

Moreover, package offers are valid so long as their terms are not coercive. (*Liang v. Superior Court, supra,* 100 Cal.App.4th at p. 1056.) In *In re Ibarra* (1983) 34 Cal.3d 277, 289, fn. 5 [193 Cal.Rptr. 538, 666 P.2d 980], abrogated on other grounds as recognized in *People v. Mosby* (2004) 33 Cal.4th 353, 360 [15 Cal.Rptr.3d 262, 92 P.3d 841], our Supreme Court expressly acknowledged the utility of package offers: "We recognize that the 'package-deal' may be a *valuable tool* to the prosecutor, who has a need for *all* defendants, or none, to plead guilty. The prosecutor may be properly interested in avoiding the time, delay and expense of trial of all the defendants." (*In re Ibarra,* 34 Cal.3d at p. 289, fn. 5.) As relevant here, the Supreme Court went on to indicate there is nothing improper about a package offer that effectively prevents one defendant from pleading guilty in order to exculpate another defendant: The prosecutor "is also placed in a difficult position should one defendant plead and another go to trial, because the defendant who pleads may become an adverse witness on behalf of his codefendant, free of jeopardy. Thus, the prosecutor's motivation for proposing a 'package-deal' bargain may be strictly legitimate and free of extrinsic forces." (*Ibid.*)

In cases where multiple defendants are charged with a crime, it is often the case that the evidence more strongly implicates the involvement of one of the individual defendants. When the evidence against a particular defendant is strong, that individual will have a powerful incentive to accept a plea offer. Following sentencing, that individual has nothing to lose by testifying on behalf of the other codefendants and taking sole responsibility for the crime, free of further penal consequences. A package plea offer that must be accepted by all codefendants serves to prevent such a manipulation of the system by codefendants. There is nothing improper about a package offer motivated by such concerns. (*Liang v. Superior Court, supra,* 110 Cal.App.4th at p. 1056.)

## C.  *Severance*

■ The Legislature has expressed a preference for joint trials when defendants are charged with the same offense. Penal Code section 1098 provides in pertinent part: "When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order[s] separate trials." Under this section, "a trial court *must* order a joint trial as the 'rule' and *may* order separate trials only as an 'exception.' [Citation.]" (*People v. Alvarez* (1996) 14 Cal.4th 155, 190 [58 Cal.Rptr.2d 385, 926 P.2d 365].)

We review an order denying a motion to sever for abuse of discretion. (*People v. Price* (1991) 1 Cal.4th 324, 388 [3 Cal.Rptr.2d 106, 821 P.2d 610].) In order to establish an abuse of discretion, the "defendant must make a clear showing of prejudice. [Citation.]" (*Ibid.*) Our review of an order denying a severance request is confined to the record before the trial court at the time it ruled upon the motion. (*Ibid.*)

■ A court has the discretion to order separate trials when it appears that one codefendant may give exonerating testimony with respect to another codefendant. (See *People v. Massie* (1967) 66 Cal.2d 899, 917 [59 Cal.Rptr. 733, 428 P.2d 869].) In *People v. Isenor* (1971) 17 Cal.App.3d 324, 332 [94 Cal.Rptr. 746] (*Isenor*), the court set forth the following six factors to be considered in determining whether to sever based on a claim that a codefendant will give exonerating testimony: "(1) Does the movant desire the testimony of the codefendant; (2) will the testimony be exculpatory; (3) how significant is the testimony; (4) is the court satisfied that the testimony is bona fide; (5) on the basis of the showing at the time of the motion, how strong is the likelihood that, if the motion were granted, the codefendant will testify; and (6) what is the effect of granting in terms of judicial administration and economy? [Citation.]"

■ There appears to be no dispute that appellant satisfied the first three requirements contained in *Isenor*. Appellant clearly desired Palms's testimony, which was both exculpatory and highly relevant to the contested issues in the case, if the assertions of appellant's counsel were to be believed. Our analysis turns on the latter three areas of inquiry identified in *Isenor*.

■ We first address whether the testimony was bona fide. Because the proposed testimony was uncorroborated, the court had good reason to question whether it was legitimate. Initially, appellant's counsel offered little more than a bare assertion that Palms had told his client he would provide exculpatory testimony. Palms's counsel did not corroborate the substance of the proposed testimony but instead merely indicated that Palms wanted to testify on behalf of appellant if he could be assured of a three-year sentence. Later, when the court revisited the matter, Palms's attorney insisted he was the only one who could speak for Palms and asserted that Palms's conversation with appellant's attorney should not have taken place. Palms's attorney did not confirm the representations made by appellant's attorney other than to

indicate that Palms had made a statement that he was willing to testify on appellant's behalf, without indicating the substance of that testimony. As the court observed in *Isenor*, "It is not error to deny a motion to sever based solely on defendant's bald assertion that someone has made an exonerating statement in his behalf. [Citation.]" (*Isenor, supra,* 17 Cal.App.3d at p. 333.)

The court in *Isenor* did not set out a fixed rule for determining when the moving party's showing is adequate. However, the court recognized that in cases in which an appellate court has held that severance should have been granted, the codefendant exculpated the defendant in an affidavit, in open court or in statements to the police, or there was an otherwise reliable indication the codefendant would testify in a way that actually exonerates the defendant. (See *Isenor, supra,* 17 Cal.App.3d at pp. 332–334.) Absence of corroboration weighs against severance. (See *U.S. v. Davis* (3d Cir. 2005) 397 F.3d 173, 183; *U.S. v. Gonzalez* (3d Cir. 1990) 918 F.2d 1129, 1137.) At the time the severance motions were considered by the court here, there was nothing before the court to corroborate the assertions about Palms's proposed testimony. Indeed, it was not until after Palms pleaded no contest and was sentenced that he first made any kind of statement purporting to exonerate appellant.

■ With regard to the likelihood that Palms would testify if severance were granted, that factor, too, weighed against severance. Palms offered to testify only upon conditions acceptable to him. If appellant's trial went first, as the trial court contemplated, Palms would not have testified because he had no assurance of receiving a three-year sentence. Palms's willingness to testify was contingent on his case being tried first. However, appellant and Palms had no right to dictate the scheduling of trials to their advantage. The federal appellate courts have recognized that if an offer to testify is conditioned on the order of trials, the trial court has the discretion to deny the motion. (See *U.S. v. Ford* (D.C. Cir. 1989) 276 U.S. App.D.C. 315 [870 F.2d 729, 731]; *U.S. v. Broussard* (5th Cir. 1996) 80 F.3d 1025, 1038; *U.S. v. Reavis* (4th Cir. 1995) 48 F.3d 763, 767; *U.S. v. Mariscal* (9th Cir. 1991) 939 F.2d 884, 886; *U.S. v. Blanco* (6th Cir. 1988) 844 F.2d 344, 353; *Mack v. Peters* (7th Cir. 1996) 80 F.3d 230, 236–237.)

In *U.S. v. Reavis, supra,* 48 F.3d at page 767, the court explained why a conditional offer to testify is problematic: " 'Severance is not required when the co-defendant would testify only if his case came first.' [Citation.] Were we to accede to the co-defendant's demand, we would 'create a situation

where, following his own trial, the witness would be more inclined to "throw a bone" to his codefendants by testifying favorably to them because his own case had been disposed of and he had little to lose by testifying.' [Citation.]" Thus, it is inappropriate to allow codefendants to manipulate the order of their trials for essentially the same reasons it is appropriate for a prosecutor to offer a package plea deal in order to prevent one codefendant from exculpating another codefendant without fear of further penal consequences.

Because Palms's offer to testify was conditioned upon his case being tried first, it was not an abuse of discretion to deny the motion to sever. Further, even if the court had severed the trials and granted the request to try Palms first, there was still no guarantee Palms would offer exculpatory testimony at appellant's trial. If Palms's trial were conducted first, Palms still would have faced the options of either pleading open or going to trial. In light of the representations made by Palms's counsel, the trial court could have reasonably concluded Palms would have elected to go to trial in the absence of assurances he would receive a three-year sentence. However, if he had gone to trial and been convicted, his privilege against self-incrimination would have continued until his conviction became final. (See *Mitchell v. United States* (1999) 526 U.S. 314, 326–327 [143 L.Ed.2d 424, 119 S.Ct. 1307]; *People v. Fonseca* (1995) 36 Cal.App.4th 631, 634–635 [42 Cal.Rptr.2d 525].) Such finality might not have been achieved until the conclusion of a lengthy appeal, if Palms had some grounds for appealing either his conviction or sentence. Only if Palms achieved the result he desired—i.e., a sentence of three years or less—could one assume Palms would agree to testify at appellant's trial after foregoing his right to appeal. Thus, there was substantial uncertainty about whether Palms would actually testify on appellant's behalf, even if the trials were severed and conducted in the order appellant and Palms requested.

Finally, concerns about judicial efficiency weighed against severing the trials. Appellant claims that, because Palms's criminal liability resulted from a simple hand-to-hand sale, a separate trial of Palms would not have required an expert on multiple-person drug transactions, thus limiting the evidentiary overlap between the two cases. It may be true, as appellant contends, that some of the evidence required to convict appellant would have been unnecessary at a separate trial of Palms. The fact remains, however, that the evidence against Palms and appellant was largely the same. It was more efficient to conduct a single trial instead of presenting the same evidence in two trials before separate jury panels. While the concern for judicial efficiency, by itself, does not outweigh a defendant's right to a fundamentally fair trial, it is nonetheless a proper factor for a court to consider in weighing the severance decision.

In support of his position, appellant relies heavily upon the decision in *U.S. v. Echeles* (7th Cir. 1965) 352 F.2d 892 (*Echeles*). As the court in *Isenor* observed, the facts before the *Echeles* court were "unique and distinctive." (*Isenor, supra,* 17 Cal.App.3d at p. 332.) "The *Echeles* case . . . involved an attorney charged with suborning perjury, impeding justice, and conspiracy to commit those offenses; the reviewing court reversed Echeles' conviction for failure of the trial court to grant a motion to sever, basing its decision, for the most part, on the possibility that the codefendant . . . would offer exonerating testimony at a separate trial. [Citation.]" (*Ibid.*) What made the facts in *Echeles* distinctive was that the codefendant had made three judicial statements in a prior trial exonerating Echeles and "had indicated thereby that he was not only willing but desirous of testifying in behalf of Echeles in the event the latter's motion for separate trial was granted."(*Ibid.*) By contrast, at the time the motion to sever was before the court in this case there was nothing to corroborate the assertions of appellant's trial counsel about what Palms might say if given the opportunity to testify.

Another unique aspect of the *Echeles* case is that a joint trial permitted a jury to hear admissions of the codefendant taken from the transcript of the prior trial and tending to incriminate Echeles, whereas the testimony from the codefendant at the prior trial tending to exculpate Echeles was excluded. (*Echeles, supra,* 352 F.2d at p. 899.) The *Echeles* court took "special note" of this situation, which "really served to compound the error." (*Ibid.*) Under California law, the mere fact that an out-of-court statement by one defendant might be offered into evidence and tend to incriminate a codefendant may constitute a sufficient ground, in itself, to justify severance. (See *Isenor, supra,* 17 Cal.App.3d at p. 331 [listing grounds justifying severance].) Here, the concern articulated in *Echeles* did not arise. There was no suggestion that an out-of-court statement by Palms would be offered into evidence and would tend to incriminate appellant at a joint trial.

Under the circumstances presented here, we conclude it was not an abuse of discretion for the trial court to deny appellant's motion to sever.

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

* See footnote, *ante,* page 240.

## DISPOSITION

The sentence is modified to strike the four prior prison term sentence enhancements imposed under Penal Code section 667.5, subdivision (b). The trial court is directed to prepare an amended abstract of judgment in accordance with this disposition and deliver it to the Department of Corrections and Rehabilitation. Except as so modified, the judgment is affirmed.

Siggins, J., and Jenkins, J., concurred.