Filed 5/11/26  P. v. Rodriguez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F090104 |
| Plaintiff and Respondent, | (Super. Ct. No. M11311) |
| v. | |
| JESUS HERNANDEZ RODRIGUEZ, | **OPINION** |
| Defendant and Appellant. | |

## THE COURT[*]

APPEAL from an order of the Superior Court of Madera County.  Sosi Chitakian Vogt, Judge.

Law Office of Angelica Maria Gutierrez Diaz and Angelica Gutierrez Diaz for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ivan P. Marrs and Angelo S. Edralin, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Jesus Hernandez Rodriguez appeals from the order denying his motion to vacate his conviction pursuant to Penal Code section 1473.7.[1]  He contends the trial

---

[*]       Before Hill, P. J., Franson, J. and DeSantos, J.

[1]       All further undesignated statutory references are to the Penal Code.

1.

court erred by finding he had not met his burden of proving his conviction "is legally invalid due to prejudicial error damaging [his] ability to meaningfully understand … the actual or potential adverse immigration consequences." (§ 1473.7, subd. (a)(1).)

Finding no error, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

*Information and Change of Plea*

On March 15, 1993, the Madera County District Attorney's Office filed a complaint charging appellant with a single count possession of cocaine for sale (Health & Saf. Code, § 11351).

Appellant underwent a preliminary hearing where the investigating officer testified to the facts underlying the charge. On March 12, 1992, the officer observed appellant arrive by vehicle in an area known for drug use and sales. Appellant parked and appeared to take some items out of the front of his pants and deposit something on the ground near his vehicle and the vehicle parked behind it. He thereafter left the area on foot. Upon examination of the ground near the vehicles, the officer found bindles of cocaine that he opined were packaged in amounts for sale. The officer testified it was not uncommon for people to hide drugs they have on them to avoid police stopping them and finding the drugs on their person.

Appellant was held to answer to the charge, an information was filed, and he initially entered a plea of not guilty and requested a jury trial.

On May 25, 1993, appellant decided to change his plea. With the assistance of a Spanish interpreter, appellant completed a preprinted plea form. The plea form indicated the plea was "unconditional,"[2] and appellant had not been promised anything in exchange for his plea. Among the items appellant initialed was paragraph 14, which read:

---

[2]     An "unconditional" plea, also known as an "open" plea is " 'a plea unconditioned upon receipt of a particular sentence or other exercise of the court's powers.' " (*People v. Conerly* (2009) 176 Cal.App.4th 240, 245, fn. 1.)

"My attorney has explained the possible penalties and consequences of the plea(s) of GUILTY to be 2, 3 or 4 years prison, and/or $20,000 fine with parole term; [r]estitution fine; drug offender registration **and, if not a citizen, my plea may have the consequence of my deportation, exclusion from admission to the United States or denial of naturalization pursuant to the laws of the United States**." (Boldface added.)

Appellant signed the section attesting he had "personally prepared and discussed with my attorney, or have read, discussed and had explained to me by my attorney, each of the above items, and I understand same." Additionally, the interpreter signed the section attesting he had "interpreted the above declaration and each item thereof to the Defendant, translating to the best of my ability from the English language to the … Spanish … language and from the … Spanish … language to the English language." Finally, appellant's attorney signed the section attesting she "personally read, discussed and explained the contents of the above declaration to the defendant and each item thereof."

At the change of plea hearing, appellant was assisted by the interpreter who went over the plea form with him and was represented by counsel. The court confirmed with appellant that his initials were on the plea form and confirmed with the interpreter that he read the entire document to appellant. During the plea colloquy, the following exchange took place:

"THE COURT:     You understand you're pleading guilty to possession of cocaine for sale?

"[APPELLANT]:     The only reason I'm pleading guilty is so that I will be released.

"THE COURT:     I understand that is a condition of your pleading guilty, but you understand you're pleading guilty to possession of cocaine for sale?

"[APPELLANT]:     Yes.

"[¶] … [¶]

3.

"THE COURT:     Okay.  And this plea form is filled out as an unconditional plea.  However, we – I am doing this under the People v. Fellman[3] where you will be sentenced to three years, the mid term, and execution of sentence will be stayed on the condition that you be on probation for a period of five years, you will be released at the time of sentencing on felony probation and under the usual terms of probation, which includes a fine and register as a drug offender, and **you will be deported**, and **if you return to the United States illegally you will immediately be sentenced to three years in prison**.  Do you understand that?

"[APPELLANT]:    **Yes.**

"THE COURT:     Okay.

"[DEFENSE COUNSEL]:  Your Honor, I do want it clear for the record that this – this plea is against my advice, and I want it clear that I am reluctantly consenting to him entering the plea."  (Boldface added.)

The court then asked for appellant's plea, to which appellant responded, "I'm pleading guilty – I'm not guilty, but I'm pleading guilty on the condition that I'm going to be released."  The court responded, "[Appellant], if you do not wish to enter an unconditional plea of guilty under the terms that I've suggested, then we will confirm your trial.  So I realize you are maintaining your innocence, but off the record we discussed evidence, and the evidence is highly suggestive that the acts you are accused of are true and that's the reason I made the Fellman [*sic*] plea.  And either you enter an unconditional plea of guilty, or we set it for trial."  Appellant replied, "Plead guilty." Counsel stipulated to a factual basis for the plea, and the court accepted appellant's plea and referred the matter to probation for a recommendation.

---

**3**     It is a little unclear what case the court was referring to, as we have been unable to locate a case with the caption "People v. Fellman," but we surmise the court may have been referring to *People v. Superior Court (Felmann)* (1976) 59 Cal.App.3d 270.  In *Felmann*, the Court of Appeal recognized a distinction between prohibited judicial plea bargaining and what it viewed as a permissible 'indicated sentence.'  Considering the context of the court's statements, it appears the court here was explaining it had given an indicated sentence off the record.

*Sentencing*

In preparing its report, probation interviewed appellant. Appellant reported to probation that he did not know if he would like to be granted probation as he planned to go to Mexico to work as soon as it became possible.[4] He reported that he was one of five children, and both of his parents, and all of his siblings lived in Mexico. He had lived in Madera County for one year and did not reside in the United States legally. He was currently unemployed, but at the time of his arrest, he had found employment in Santa Maria. He had worked as a field laborer for approximately six months and had no other means of support. He further reported he was married in 1988 and had 1 two-year-old

[4] "In discussing portions of the probation report, we are cognizant of section 1203.05, which limits (but does not entirely preclude) public access to the probation report 60 days after judgment is pronounced or probation is granted. The Legislature's intent in cloaking the report with conditional confidentiality was to restrict access only to personal information about a defendant (such as details concerning his or her family background, medical and psychological condition, financial status, military record, and substance abuse history) not nonpersonal information, such as the factual summary of an offense and the evaluations, analyses, and recommendations of the probation officer." [Citation.] '[I]n a given case, the report may not contain any personal information; it may contain only personal information that is readily available in other public documents; and the probation report contains much nonpersonal information.' [Citation.] In apparent recognition of this, appellate courts sometimes quote from a probation report's factual summary of the offense." (*People v. Williams* (2021) 63 Cal.App.5th 990, 996, fn. 9.)

Here, to the extent the information we refer to from the probation report is personal information, we include it only where absolutely necessary to our resolution of the issue on appeal. The information we cite is directly relevant to appellant's state of mind at the time or close thereafter to the time he entered his plea (over 30 years ago), and something he has put at issue by virtue of his bringing his section 1473.7 motion and the present appeal. We have been mindful of only including details that are relevant to the issues on appeal, so as to not unnecessarily violate appellant's or his family's privacy.

We note the People's respondent's brief cites to similar information from the probation report, and appellant has not filed a reply brief or otherwise objected to reliance on the probation report in ascertaining the facts and circumstances surrounding appellant's plea nor has he refuted the truth of the statements he made to the probation officer.

child. Both his wife, with whom he was still in an intact marriage, and child lived in Mexico.

Probation was recommending denial of probation as, among other reasons, appellant was planning on returning to Mexico as soon as it became possible, had no family ties in the community, did not have the ability to comply with a grant of probation "as he will be deported upon his release from custody as he does not legally reside in the United States," and "a felony conviction could exclude the defendant from obtaining U.S. citizenship and from obtaining certain types of employment." Rather, probation recommended a two-year term in state prison, and "release to INS/Border Patrol upon commitment completion."

Appellant was sentenced on June 14, 1993. He was assisted by a Spanish interpreter and represented by counsel. Pursuant to the court's indicated sentence, it imposed the middle term of three years, with execution suspended on the condition appellant be on probation for a period of five years. The terms and conditions of probation, which the record indicates were accepted by appellant, included that appellant would receive credit for time served; the court recommended release to immigration authorities upon completion of commitment; appellant was to report immediately to probation "upon re-entry into the United States"; and appellant was "not to re-enter the United States illegally." Appellant was remanded to custody at the conclusion of the hearing.

### Section 1473.7 Proceedings

On January 3, 2025, appellant filed a motion to vacate his conviction pursuant to section 1473.7 on the ground that he prejudicially did not meaningfully understand the immigration consequences of his plea.

Appellant's motion was accompanied by a declaration signed in Santa Maria, California, wherein he attested to the following: He entered the United States from Mexico when he was 14 years old, only spoke Mixteco, and never attended any American

6.

schools. At the time of his guilty plea, he was only 18 years old, and "there were no discussions of the immigration consequences that were attached to that … plea." Appellant asserted he "initialed and signed the guilty plea form because the interpreter instructed" him to. As for paragraph 14, which he initialed and which stated his plea "may" have the consequences of deportation, he understood that to mean any adverse immigration consequences were "only a possibility, and "no one ever told [him]" that deportation "was a certainty." He pled because he was "promised" he would be released from custody, but when he was returned to custody following his plea, he learned for the first time that immigration authorities had placed a no-bail detainer on him. The day he entered his plea,[5] instead of being released, he was transferred to immigration authorities' custody. Appellant also was never told the immigration consequences "would be for a lifetime." He stated he would not have pled guilty had he known he would not be released, that the immigration consequences were mandatory and would be imposed immediately, and that the consequences would last a lifetime. He further declared he was currently married and had five children born between the years 2001 and 2015, all in the United States.

Also attached to appellant's motion were: (1) marriage documents showing appellant was married in the State of Nevada in 2011; (2) his children's birth certificates; (3) documents from his case, including the minute orders from his sentencing and change of plea hearing and the plea form; (4) a Department of Justice criminal history showing he was transferred to an immigration facility for the deportation process the day after his sentencing; (5) character letters from his employer and church pastor, both in Santa Maria; (6) and U.S. individual tax documents dating back to 2020.

---

[5] Although appellant's declaration states he was transferred the day after he entered his plea, supporting documentation shows he was transferred the day after his sentencing.

The People opposed the motion.  They contended appellant's assertion that he did not understand the adverse immigration consequences of his plea were not supported by any meaningful corroborating evidence.  The People attached the reporter's transcript from the change of plea hearing and pointed to the trial court's advisement to appellant that he "will be deported" as a result of his plea.

Appellant filed a reply to the People's opposition.  He contended that the combination of the advisement in his plea form that he "may" be deported, the trial court's advisement that he "will" be released from custody, and the court's advisement that he "will" be deported created confusion in appellant's mind and did not qualify as "accurate and affirmative advice about the immigration consequences" of his plea.

The hearing on appellant's motion was conducted on May 2, 2025.  Counsel offered no additional evidence or argument.  The trial court stated it had read and considered the motion, opposition, and reply brief.  In ruling, the court pointed to the plea court's on-the-record advisement to appellant that he would be deported, which appellant stated he understood at the time, as well as the plea form.  The court stated it was "not swayed by Counsel's argument that taking the three together, the change of plea initial, the Court stating that he will be released, as well as the Court stating that he will be deported, as being ambiguous and not clear.  Those items are not mutually exclusive."  The court explained,

> "As the Court looks at the [change of plea] transcript in whole, [appellant] was clearly advised that he will be deported by the Court – Court did not use any passive language – and that he would be released on probation, which he was, and he would not be committed to prison.  The Court went on to further state that if he came back illegally, 'You will be immediately sentenced to three years in prison.'  The Court was unequivocal about the immigration consequences that he will be deported.  Court used plain and clear language, and the Court left no doubt with its language that he will be deported.  The Court further went on to state that he be released on five years' probation, under probation terms and conditions, and if he illegally enters the United States, then he will be committed to prison.

8.

"I don't know how much clearer the Court could have been that he will be deported if he enters the United States illegally, that he will serve the time, and that he will be released on probation.

"Taken as a whole, the Court finds that the language was clear. The language was concise and left nothing open to speculation; therefore, the request for the motion to withdraw the plea is denied."

## DISCUSSION

### I.    Applicable Legal Principles and Standard of Review

A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence because said conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence. (§ 1473.7, subd. (a)(1).) It is the moving party's burden to establish the grounds for relief by a preponderance of the evidence. (*Id.*, subd. (f)(1).)

To obtain relief, an eligible moving party "must first show that he did not meaningfully understand the immigration consequences of his plea." (*People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*).) The key to this element is "the mindset of the defendant and what he or she understood—or didn't understand—at the time the plea was taken." (*People v. Mejia* (2019) 36 Cal.App.5th 859, 866.) That is, " 'the *defendant's own error* in … not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States.' " (*Id.* at p. 871.) A moving party is not required to prove he received ineffective assistance from his counsel. (See § 1473.7, subd. (a)(1) [invalidity of conviction "may, but not need, include a finding of ineffective assistance of counsel"]. "[T]he inquiry into a defendant's state of mind may often involve the weighing of credibility and circumstantial evidence." (*Espinoza*, at p. 325.)

The moving party must also "show that his misunderstanding constituted prejudicial error." (*Espinoza, supra*, 14 Cal.5th at p. 319.) In this context, prejudice

9.

means "a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*People v. Vivar* (2021) 11 Cal.5th 510, 529.) A reasonable probability is merely a probability sufficient to undermine confidence in the outcome; it does not mean more likely than not. (*People v. Rodriguez* (2021) 68 Cal.App.5th 301, 324.) The court must consider the totality of the circumstances; factors to consider include but are not limited to " 'the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, … whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible[,]' … the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference between the bargained-for term and the likely term if he were convicted at trial." (*Espinoza* at pp. 320–321.)

"A defendant must provide ' "objective evidence" ' to corroborate factual assertions. [Citation.] Objective evidence includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Espinoza*, *supra*, 14 Cal.5th at p. 321.) A defendant is not required, however, to submit contemporaneous documentation and "no specific kind of evidence is a prerequisite to relief." (*Id*. at p. 325.) Rather, the totality of the circumstances test "necessarily involves [a] case-by-case examination of the record." (*Ibid*.)

On appeal, we conduct independent review in assessing whether a defendant has demonstrated the requisite misunderstanding and prejudice. (*Espinoza*, *supra*, 14 Cal.5th at p. 319; *People v. Vivar*, *supra*, 11 Cal.5th at pp. 526–528.) When, as here, "the trial court's findings 'derive entirely from written declarations and other documents,' the trial court and the reviewing court ' "are in the same position," ' and no deference [to the trial court's factual determinations] is owed." (*Espinoza*, at p. 320.)

10.

## II.    Analysis

Appellant has asserted that his conviction is classified as an aggravated felony and a controlled substance offense under the Immigration and Nationality Act (INA) (8 U.S.C. § 1101 et seq.), and, as such, he is subject to mandatory deportation and, by virtue of his conviction's classification of an aggravated felony, permanent exclusion from the United States. (See *id.*, § 1227(a)(2)(A)(iii), (B)(i); see also *Moncrieffe v. Holder* (2013) 569 U.S. 184, 187.) Another consequence of being convicted of an aggravated felony is being "ineligible for cancellation of removal, a form of discretionary relief allowing some deportable aliens to remain in the country." (*Sessions v. Dimaya* (2018) 584 U.S. 148, 153; see 8 U.S.C. § 1229b(a)(3), (b)(1)(C).) Respondent does not dispute appellant's classification of his offense as an aggravated felony and controlled substance offense. Appellant has not asserted he is currently facing immigration action, only that "the conviction in this matter is preventing him from gaining legal status in the United States currently."[6]

Appellant contends he established that he did not meaningfully understand his plea had adverse immigration consequences, namely that (1) he would be deported as a certainty, (2) he would be transferred immediately to immigration custody for deportation proceedings upon the entry of judgment, and (3) the consequences would be permanent. He further contends he demonstrated the requisite prejudice by declaring, "Had I known a) that the promise of my release after my guilty plea was illusory, b) that the immigration consequences were not only mandatory and final, but they would be imposed immediately following my guilty plea, and c) that my deportation, exclusion

---

[6]    Neither the court nor the People below or on appeal dispute that the petition was timely (see § 1473.7, subd. (b)), nor that appellant established his conviction was "currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization" (see § 1473.7, subd. (f)(1)). Because these issues are not in dispute, and appellant's motion was properly denied on substantive grounds, we do not reach these issues.

from admission to the United States was a certainty, and would last a lifetime, I would have rejected the offer and taken my chances at trial."

After considering all the relevant evidence and circumstances, we conclude appellant failed to carry his burden of proof by a preponderance of the evidence.

### A. Appellant Has Not Established He Did Not Meaningfully Understand He Would be Immediately Deported as a Result of His Plea

We first address appellant's assertion that he did not understand he would be deported or that deportation proceedings would be initiated immediately following his sentencing. Since appellant's assertions were brought by way of declaration rather than live testimony, we are tasked with determining their credibility and weight on appeal.

We find appellant's claim that he did not understand he would be deported following his plea wholly uncredible, as it is directly belied by strong evidence on the record. The court expressly advised him that he would be deported in open court during his change of plea hearing and would be subject to imprisonment upon return to the United States, and he indicated he understood. The evidence of said advisement—a court reporter's transcript—is highly credible, in contrast to defendant's "self-serving" statements. (See *People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 664.) On appeal, appellant does not meaningfully address the court's advisement.

Appellant was again advised at his sentencing that conditions of his probation included that the court was recommending "release to Immigration authorities" and that he was not to *reenter* the United States illegally. There is no evidence he objected to these conditions at that time; had there been any question or concern as to what they meant, we presume he would have raised it then.

We recognize that a strongly worded advisement does not necessarily bar a defendant from proving that he or she did not meaningfully understand the consequences of a plea. (See *People v. Curiel* (2023) 92 Cal.App.5th 1160, 1175 [plea form

12.

advisement defendant "will" be deported is not a categorical bar to relief]; *People v. Manzanilla* (2022) 80 Cal.App.5th 891, 906 [even strongly worded advisements do "not absolve defense counsel of the duty to advise of immigration consequences"]; *People v. Camacho* (2019) 32 Cal.App.5th 998, 1011, fn. 8 [even though defendant "was advised that his plea '*will* result' … in adverse immigration consequences," he presented sufficient evidence of his lack of understanding to warrant § 1473.7 relief].)

In this case, however, the surrounding circumstances beyond the advisements appellant was given indicate to us that appellant was fully aware that he would be deported and was not to reenter the United States without consequence, at least during the period of his probation. Based on appellant's statements to probation, as well as to the court, his motivation to plead guilty appeared to be to achieve his goal of returning to Mexico as soon as possible. To this end, he went against his attorney's advice in order to receive the benefit of the court's indicated sentence of probation, which saved him the time of a trial, not to mention, exposure of up to four years' imprisonment. Although appellant now states he did not understand he would be transferred to immigration custody immediately upon his release from custody as to his criminal charge, there was no reason for appellant to believe, based on the record, that deportation proceedings would not be immediately initiated.

Finally, appellant has not established to our satisfaction that he was deported *because of* his plea. He informed probation he did "not reside in the United States legally," which suggests to us he may have been residing in the United States without documentation, such as a valid visa or legal permanent resident status. Appellant has not differentiated, either in his motion or on appeal, between immigration consequences stemming from his criminal conviction and any consequences stemming from his immigration status nor made any comment on the extent to which he may have been subject to deportation proceedings regardless of his criminal conviction. Nor has he

demonstrated that his plea precluded him from obtaining relief from removal that otherwise would have been available to him.

Concluding for the above reasons that appellant did not establish he did not meaningfully understand he would be immediately deported following his plea, we now turn to what we find to be the crucial issue: whether appellant meaningfully understood that pleading to an aggravated felony would result in *permanent* exclusion from the United States.

> **B.** **To the Extent Appellant Has Established He Did Not Meaningfully Understand He Would be Subject to Permanent Consequences by Pleading Guilty, He Has Not Established Prejudice**

While there is some evidence that appellant was advised returning to the United States would result in adverse consequences, such as the court's advisement he would be in violation of his probation if he were to enter the United States and expected to serve his prison sentence and was not to reenter the United States *illegally*, we acknowledge that the record does not conclusively refute appellant's claim he was never advised that conviction of an aggravated felony would result in *permanent* exclusion from the United States. Further, we cannot presume, even taking into consideration the credibility issues with appellant's declaration, that he was advised of all the consequences beyond immediate deportation. Appellant's conviction predates *Padilla v. Kentucky* (2010) 559 U.S. 356, 371, as well as the 2015 enactment of sections 1016.2 and 1016.3, which require defense counsel to advise criminal defendants of the immigration consequences.[7]

---

[7] We note appellant's plea attorney did not participate in the motion proceedings either by declaration or testimony. Appellant provided no evidence that he sought to obtain a statement from his trial counsel regarding the circumstances surrounding his plea nor did he give notice to his trial counsel (see § 1473.7, subd. (h).) Moving parties are not required to provide a declaration of plea counsel (*Espinoza, supra*, 14 Cal.5th at p. 325) but such a declaration could provide support for a moving party's factual assertions.

However, even if we were to conclude that appellant did not meaningfully understand this aspect of the immigration consequences of his plea, we conclude he has not established the requisite prejudice, i.e., that there was a reasonable possibility he would not have pled guilty had he known he would have suffered *permanent* immigration consequences.

It is uncontested that, at the time of appellant's plea, he had no significant ties to the United States, having been in the country for only few years at most, and having no current employment, means of support, or family in the United States. Conversely, his entire family, including his then-wife and child, lived in Mexico, and appellant was clear that he intended to go back to Mexico once he was able to. He has provided no evidence that, at the time of his plea, he had plans to try return to the United States or seek naturalization as a citizen or other legal status in the future. As stated above, his motivation to plead appeared to be to return to Mexico as soon as possible. This motivation was strong, as appellant pled against his attorney's advice and without any promises from the People, only an indicated sentence from the court that would allow him to reach his goal in the quickest manner. Given appellant's stated desire to leave the United States and the determination he showed in making that happen, we cannot conclude immigration consequences held much weight in appellant's mind in deciding whether to plead guilty. In our view, these contemporaneous circumstances hold considerably more weight than appellant's bare assertion that he would not have pled guilty had he known the consequences. (See *People v. Villalba* (2023) 89 Cal.App.5th 659, 673 ["It is not enough for [a] defendant simply to declare that he would not have accepted any plea that would result in deportation"].)[8]

---

[8] These facts also support a conclusion that even if we were to find appellant did not meaningfully understand that he would be deported following his plea, we would nonetheless conclude that this would not have influenced his decision to plead guilty.

Moreover, on appeal, the overwhelming thrust of appellant's argument that he suffered prejudice is that he would not have pled guilty had he known he would be immediately deported, not that his plea would result in permanent immigration consequences. He asserts the evidence supports that his motivation to plead guilty was to be "released," so if he knew he would have been transferred to immigration custody, he would have gone to trial. This argument is not persuasive for several reasons, the first two upon which we have already touched.

First, we conclude appellant has not shown he did not meaningfully understand he would be deported upon his release on probation; thus, as to this consequence, we do not reach the issue of prejudice because we find no error. Even if, however, appellant established he did not understand he would be immediately transferred to immigration custody, there is no evidence the transfer was not in line with his stated goals to return to Mexico since the additional detention appellant endured resulted in deportation proceedings. Second, appellant has not established deportation was a consequence of his plea rather than his immigration status. Finally, the record undermines his assertions he pled guilty in exchange for a "promise" to be released and that such a promise was "illusory." To the contrary, the record indicates he entered an "unconditional" plea in response to an indicated sentence by the trial court, not as part of a plea agreement with the prosecution or pursuant to any "promise." (See fn. 2, *ante*.)[9]

---

[9] As explained in *People v. Clancey* (2013) 56 Cal.4th 562, 575, an indicated sentence represents "the same punishment the court would be prepared to impose if the defendant were convicted at trial," rather than "an attempt to induce a plea by offering the defendant a more lenient sentence than what could be obtained through plea negotiations with the prosecuting authority," and when properly indicating a sentence, the trial court makes "no *promise* that the sentence will be imposed."

To the extent that appellant is suggesting the court engaged in improper plea bargaining, such a claim is not properly before us, as appellant does not make such a claim directly, nor establish such a claim is timely or properly addressed in a section 1473.7 motion.

16.

We acknowledge that appellant presented evidence of extensive ties he made to the United States *after* his conviction and presumed deportation. This is not relevant to our evaluation of appellant's mindset at the time he entered his plea. Appellant has provided sparse information explaining what happened after deportation proceedings were initiated and under what circumstances he formed the ties he describes in his motion. From the information he has provided, appellant formed such ties after participating in deportation proceedings and presumably being deported and knowing the effects of his deportation on illegal reentry to the country. Appellant has not claimed, much less persuasively established, that he formed ties to the United States under the mistaken understanding resulting from the error he claims in his section 1473.7 motion that he was residing in the country legally or would someday be able to achieve some form of legal residence.

For the aforementioned reasons, we conclude appellant has not met his burden to establish a reasonable possibility he would not have pled had he known the adverse immigration consequences of his plea.

## C.    Conclusion

After an independent review of the totality of the circumstances, we conclude that to the extent appellant established that he did not understand the immigration consequences of the plea that led to his conviction and sentence, he failed to establish that any error resulted in prejudice. (See § 1473.7, subd. (e)(1).) Consequently, we affirm the order denying the motion.

## DISPOSITION

The order denying appellant's section 1473.7 motion is affirmed.